# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY WILLIAMS, | Case No. 1:18-cv-00102-LJO-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS |
| v. | |
| BRANDON PRICE, et al., | (ECF No. 17) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Corey Williams, a civil detainee, is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint was screened on March 7, 2018, and Plaintiff was directed to either notify the Court that he is willing to proceed on the claims found to be cognizable in the screening order or file an amended complaint. (ECF No. 11.) On April 6, 2018, Plaintiff filed a first amended complaint. (ECF No. 17.)

## I.

## SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e)

applies to all in forma pauperis complaints, not just those filed by prisoners); <u>Calhoun v. Stahl</u>, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); <u>Barren v. Harrington</u>, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. <u>Iqbal</u>, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678.

## II.

## FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiff is a civil detainee at Coalinga State Hospital ("CSH") facing commitment as a sexually violent predator ("SVP") under California's Sexually Violent Predator Act ("SVPA"),

California Welfare and Institutions Code, section 6600 et seq. (First Am. Compl. ("FAC") 1,[1] ECF No. 17.) He is actively pursuing a college degree in mathematics. (Id.) Plaintiff brings this action against Brandon Price, Executive Director of CSH, and Pam Ahlin in their personal and official capacities alleging that new revisions to section 4350 of Title 15 of the California Code of Regulations violate his constitutional right to own and possess certain property. Plaintiff's complaint is comprised mainly of legal argument making it somewhat unclear which claims Plaintiff is attempting to pursue in this action. The following factual allegations are included in the first amended complaint.

Defendant Ahlin signed and submitted the newly revised section 4350 to the Office of Administrative Law, and Defendant Price is responsible for the implementation of the newly revised section 4350 at CSH. (FAC at 1.) On January 12, 2018, Plaintiff received a memorandum from Defendant Price regarding an emergency regulation that was approved by the Office of Administrative Law. (Id.) The memorandum informed the patients at CSH that certain electronic devices and items were considered contraband and implementation of the new regulation would begin in several weeks. (Id. at 2-3.) The regulations make certain of Plaintiff's devices, including multi-media players, mp3 music players, gaming devices such as an Xbox360 and or PSP, and graphing calculators, which Plaintiff has been able to possess for years, contraband. (Id. at 4.)

Plaintiff alleges that confiscation of these devices denies him the right to access the courts, play video games, listen to music, watch television shows and movies, and pursue his college degree. (Id.) Pursuant to the new regulation, Plaintiff is allowed only one television, one radio, thirty commercial CDs, DVDs or BlueRay disks, and no graphing calculators or mp3 players which have no internet capability. (Id.)

CSH is located in a rural area and external antennas are required to be removed from radios. (Id. at 5.) Plaintiff cannot have a television antenna attached to his window. (Id.) Plaintiff's room is not fitted with any type of cable or master television distribution system and television

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

and FM radio reception are virtually nonexistent. (Id.) Plaintiff relies on his multi-media players and mp3 player for entertainment. (Id.) There are two televisions per unit in the housing area for fifty patients. (Id.) These televisions receive satellite service, but he cannot get 49 other people to agree on the programing to watch so he cannot enjoy television in the public areas. (Id.) The majority of physical altercations in the facility result from disagreements over the public televisions and which programs to watch. (Id.)

On January 22, 2018, unidentified defendants confiscated most of Plaintiff's personal property. (Id. at 7.) Not only were items within section 4350 confiscated, but food items, utensils, bowls, plates, papers, legal work, cords, power supplies, batteries, powder drink mixes, toiletries, soap, deodorant, toothpaste, toothbrushes, pens, instant coffee, and condiments were confiscated. (Id.) Plaintiff should have been allowed by section 4350 to keep his Android tablet device, Xbox 360, and other peripheral devices such as controllers, keyboards, power supplies, and battery chargers, but these items were confiscated. (Id.) Plaintiff has been allowed to have certain property for more than a decade that is now considered to be contraband. (Id.)

The new regulation was justified due to the "epidemic of child pornography" at CSH, however the regulation affects all institutions statewide. (Id. at 8.) Since CSH opened five employees have been caught in possession of child pornography. (Id. at 9.) It is not clear if these individuals were included in the numbers to justify the alleged epidemic of child pornography. (Id.)

Prior to instituting the new regulation, patients were entitled to have more than one radio, one television, one CD/DVD/BluRay player, and 30 factory CDs/DVDs/BluRay disks. (Id.)

Since the defendants have taken control of his property, Plaintiff contends there is no safety and security concern remaining so they may not search his property for illegal material. (Id. at 9-10.) Sgt. Jones stated that all confiscated property was booked into evidence and would be searched for illegal material. (Id. at 10.) Plaintiff contends that a search warrant must be sought before any of the confiscated property can be searched. (Id. at 11.)

Plaintiff alleges that there was no notice of the change in the regulation to Plaintiff or other

patients at CSH.[2]  (Id.)  According to the memorandum that circulated after section 4350 had been amended, the emergency regulation package was submitted on December 22, 2017 without notice to the patients so that they could comment.  (Id.)  The Regulation became effective on January 12, 2018.  (Id.)  On January 13, 2018, the facility was placed on lock-down and Plaintiff had no access to the law library.  (Id. at 12.)  Plaintiff had typewriters in his unit but beginning January 13, 2018, he was denied use of them for his legal documents.  (Id.)  Plaintiff did not have any lined paper because he usually creates documents with a word processor and normally types or prints his documents.  Due to the lock down Plaintiff was not able purchase lined paper. (Id.)  Plaintiff got paper from another patient and got assistance from another patient to prepare his claim.  (Id.)  Defendants refused to make copies for Plaintiff.  (Id.)  The nursing station has a copy machine but it is not available for patient's use.  (Id.)  Staff made copies of memorandums from Defendant Price to the patients but would not make Plaintiff copies of his court paperwork. (Id.)

Plaintiff has been denied telephone access for all calls.  (Id. at 13.)  Plaintiff was denied when he asked to contact his attorney and the patient advocate.  (Id.)  All visits were suspended due to the lockdown.  (Id.)  Due to the denial of telephone access, Plaintiff could not inform potential visitors that they could not visit.  (Id.)

Plaintiff was handicapped in preparing his original complaint because he did not have access to any cases other than those that he had memorized or stored on his electronic storage media.  (Id.)  Plaintiff did not have access to a computer or printer.  (Id.)  He had to rely on an outside party to type and print his pleading.  (Id. at 14.)  Plaintiff dictated the brief via telephone and the brief was typed and mailed to Plaintiff for signing.  (Id.)

Plaintiff had two other actions pending in the District Court and almost all the information

---

[2] Based on the numerous other complaints filed by patients at Coalinga State Hospital, the Court is aware that patients were informed at the end of December of the changes to regulation, that it had been submitted for consideration, and were provided with the address to submit comment on the regulation.  Plaintiff is advised that pursuant to Rule 11 of the Federal Rules of Civil Procedure by signing his pleadings, Plaintiff is certifying that the pleading is not being submitted for an improper purpose and the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  Fed. R. Civ. P. 11(b)(3).  If the Court determines that Rule 11 has been violated it may impose appropriate sanctions which could include dismissal of the action.

was stored on his electronic media storage device and he no longer has possession or access to the data. Plaintiff is unable to pursue these matters and may be forced to drop pursuit of them. (Id.)

On January 18, 2018, Defendant Price circulated a memorandum regarding the implementation of the emergency regulation stating that enforcement would start on January 19, 2018. (Id.)

Plaintiff has been locked up for a long time and is facing an indefinite commitment and there is no guarantee he will ever be released. (Id. at 15.) Prior to being incarcerated, Plaintiff lived in Los Angeles and enjoyed excellent radio and television reception. (Id. at 16.) He did not have a need for multimedia players. (Id.) However, CSH is located in a rural area and reception is not optimal. (Id.) Further, there are local policies requiring the removal of metallic antennas from radios and televisions and disallowing external plastic antennas to be placed in the window to make reception possible. (Id.) Plaintiff is not allowed to have cable or MATV to pick up signals. (Id.) Plaintiff cannot possess a satellite radio. (Id.) These policies practically eliminate all personal channels of communication available to Plaintiff. (Id.) These conditions are punitive in nature and place a far greater burden on Plaintiff than those prisoners that are housed next door at Pleasant Valley State Prison ("PVSP"). (Id.) The prisoners at PVSP are allowed to have an MATV cable hookup in their cell. (Id.) They are also allowed to purchase and possess X-box 360s and Sony Play Station 2s as long the items are purchased from an approved vendor and the internet connectivity is removed. (Id.)

Plaintiff can purchase X-box 360s and Play Station 2s from approved vendors and can possess them under the new regulations. (Id. at 17.) Plaintiff must pay a premium price to purchase the items through an approved vendor. (Id.) Although the items are allowed by the new regulation, Defendant Price issued a memorandum on March 23, 2018 disallowing X-box gaming systems and Play Station gaming systems. (Id.)

Plaintiff is a college student and is pursuing a degree in mathematics. (Id.) Pursuant to the new regulation he is unable to have a graphing calculator. (Id.) This device has no internet connectivity and depriving Plaintiff of a graphing calculator has forced him to abandon his

course work and his hopes of earning a degree in mathematics.  (Id.)

Plaintiff seeks a declaration that section 4350 violates his First Amendment rights to freedom of speech and freedom of the press, his Fourth Amendment right against unreasonable search and seizure, and is an unconstitutional taking of his property without compensation under the Fifth Amendment.  (Id. at 18, 20.)  Plaintiff seeks an injunction to enjoin Defendants from enforcing the newly amended section 4350 in its entirety and to require defendants to return all confiscated property to Plaintiff and all similarly situated individuals.  (Id. at 20.)

## III.

## DISCUSSION

### A.      Amendments to Section 4350

To determine whether conditions of confinement of civilly committed individuals have been violated, courts look to the substantive due process clause of the Fourteenth Amendment. Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982); Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004).  States are thus required "to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," and to provide "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."  Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citations omitted).

Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than criminals, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a floor for the constitutional rights of persons detained under a civil commitment scheme, Padilla v. Yoo, 678 F.3d 748, 759 (9th Cir. 2012) (citing Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007), vacated and remanded on other grounds by 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991), abrogated on other grounds by 511 U.S. 825 (1994).  But the conditions under which civil detainees are held cannot be more harsh than those under which prisoners are detained except where the statute itself creates a

relevant difference.  Hydrick, 500 F.3d at 989 n.7.

The Due Process Clause requires that the nature and duration of the civil commitment must bear some reasonable relation to the purpose for which the individual is committed.  Jones, 393 F.3d at 931.  However, civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose.  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.' "  Valdez v. Rosenbalm, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted).  The only question is whether the defendants might reasonably have thought that the policy would advance its interests.  Id.

1. Punitive Nature of Revised Section 4350

Under Ninth Circuit precedent, "a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to [its non-punitive] purpose,' ' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" Jones, 393 F.3d at 934 (citations omitted).  "[A] presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment." Id. This presumption can be rebutted by the defendants explaining a legitimate, non-punitive purpose for the conditions imposed.  Id.

Plaintiff alleges that due to the revisions to section 4350 he is being detained under conditions that are more restrictive than the conditions of prisoners in the custody of the California Department of Corrections and Rehabilitation.  Defendants may be able to provide reasonable justification for the ban on the relevant devices, but at the pleading stage, Plaintiff's allegations are sufficient to state a cognizable conditions of confinement claim against Defendants Ahlin and Price based on the amendments to section 4350.

2. Ban on Devices With No Internet Connectivity or Memory Storage Capability

Plaintiff alleges that on on March 23, 2018, Defendant Price issued a memorandum

disallowing X-box gaming systems and Play Station gaming systems which are not precluded by section 4350. Plaintiff also alleges that the X-Box and Sony Play Station are prohibited by the revisions to section 4350. It is unclear from the regulation itself whether these devices would be prohibited as the regulation prohibits "[g]aming devices with digital memory storage ability, the ability to access the internet, or the ability to play games or other media not specifically designed for the device or only able to be played on that particular gaming device as provided by an approved third-party vendor." Cal. Code Regs. tit. 9, § 4350(a)(4)(E). Plaintiff also alleges that his android tablet was confiscated and is allowed under the revisions to section 4350.

Plaintiff contends that the regulation is overly broad as it prohibits the possession of items that cannot be connected to the internet and have no wireless capabilities which is not related to the State's security interest. At the pleading stage, the Court finds that Plaintiff has stated a claim that the regulation is overly broad based on the prohibition against devices that are not capable of being connected to the internet and have no memory storage capability.

3.    Due Process

Plaintiff also alleges that he was denied due process because the regulation was implemented without notice of the change in the regulation to patients at the hospital. The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Logan, 455 U.S. at 436; Piatt v. MacDougall, 773 F.2d 1032, 1036 (9th Cir. 1985) see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir.1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

As Plaintiff was previously advised,

To have a property interest, Plaintiff must demonstrate "more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

The question presented is whether an individual awaiting civil commitment has a property right to items in his possession that were once, but no longer, authorized, where Plaintiff is allowed to transfer those items to a third party of his choosing outside the institution.

The Ninth Circuit has not yet reached this issue. However other courts have found that "while an inmate's ownership of property is a protected property interest that may not be infringed upon without due process, there is a difference between the right to own property and the right to possess property while in prison." Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002) (quoting Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002)). Thus, courts have found that when property policies are revised to prohibit items but inmates and detainees are allowed to store the items outside of the institution, no property interest is implicated and no process is due. See e.g., Graham v. Sharp, No. 10-5563 (SRC), 2011 U.S. Dist. LEXIS 66675, at *45 (finding no constitutionally-recognized property interest for civil detainees in the continued ownership of previously authorized electronic devices in the face of newly implemented regulations that would prohibit and confiscate these devices); Davis v. Powers, No. C08-5751 FDB/KLS, 2010 U.S. Dist. LEXIS 52067, at *27 (W.D. Wash. Apr. 16, 2010) (finding no property interest when a television had to be mailed home because it was in conflict with regulations); Trenton v. Schriro, No. CIV 06-2905-PHX-MHM (DKD), 2007 U.S. Dist. LEXIS 65376, at *4-5 (D. Ariz. Aug. 31, 2007) (no property right for previously allowed typewriter where plaintiff had the option to mail it home rather than have it confiscated); Dunbar v. A.D.O.C., No. CV 08-420-PHX-SMM (MEA), 2008 U.S. Dist. LEXIS 40848, at *11 (D. Ariz. May 12, 2008) (finding no property right deprivation for confiscation of a television pursuant to prison regulations); see also Knight v. Yarborough, No. CV 03-01210-AG (VBK), 2011 U.S. Dist. LEXIS 113710, at *54 (C.D. Cal. Aug. 22, 2011) (noting that "[i]nmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish.")

(Order Requiring Plaintiff to Amend or Respond 16:16-17:17, ECF No. 11.)

This Court agrees that since Plaintiff can mail his property to a location of his choice, he will retain ownership of the items. As Plaintiff retains ownership of the items that are free of illicit materials, no deprivation has occurred and no protected property rights have been implicated; therefore, there is no process due. See Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir.2002) (where there is no state created property interest the procedural due process claim fails).

Further, as the previous order found, any procedural due process requirements appear to have been met in this case. (ECF No. 11 at 17:27-18:9.) "Where the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Halverson v. Skagit Cty., 42 F.3d 1257, 1260 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995). The regulation does not target Plaintiff or his property, but applies to all individuals that are detained in the Department of State Hospitals. '[G]overnmental

decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." Halverson, 42 F.3d at 1261 (9th Cir. 1994). As attached to Plaintiff's original complaint, the California Department of Corrections and Rehabilitation provided notice and an opportunity to comment on December 22, 2017. (Finding of Emergency and Emergency Regulation Text, attached to complaint at pp. 35-47, ECF No. 1.) Plaintiff fails to state a cognizable procedural due process claim based on the amendment to section 4350.

### B.  Confiscation of Property

#### 1.  Fourth Amendment

Plaintiff alleges that his rights under the Fourth Amendment are violated because the state is searching for illegal materials without a warrant. The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. The Fourth Amendment prohibition against unreasonable search and seizure extends to incarcerated prisoners and civil detainees. Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); Hydrick, 500 F.3d at 993 (civil detainees). However, "the reasonableness of a particular search is determined by reference to the prison context." Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988)). Confinement in a state institution raises concerns similar to those raised by housing pretrial detainees, such as "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Hydrick, 550 F.3d at 993 (quoting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded. Espinosa v. City & Cty. of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010). "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at CSH, it would necessarily be of a diminished scope given Plaintiff's civil confinement." Warrior v. Santiago, No. 116CV01504AWIGSAPC, 2018 WL 827616, at *4 (E.D. Cal. Feb. 12, 2018) (collecting cases). Although Plaintiff is not a convicted

criminal, "he is involuntarily serving a civil commitment term at a secure facility; and he is not a free individual with a full panoply of rights."  Ryan v. Siqueiros, No. 1:15-CV-01152 DLB PC, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016).  Although civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners, Youngberg, 457 U.S. at 322, maintaining facility security and effectively managing the institution are unquestionably legitimate, non-punitive government interests, Jones, 393 F.3d at 932.

Here, Plaintiff alleges that his property was confiscated because it was deemed to be contraband pursuant to section 4350 and contends that no search can be conducted without a warrant.  While Plaintiff alleges that any security and safety concerns evaporated once the contraband devices are taken into Defendants' possession, Defendants maintain an interest in determining if illegal material is present on the devices prior to releasing them to a third party of Plaintiff's choosing.  Prison officials are not required to obtain a warrant prior to searching for illegal material in the possession of inmates.  Ferguson v. Cardwell, 392 F.Supp. 750, 752 (D. Ariz. 1975) ("since a prison employee is subject to search without a warrant or probable cause, it necessarily follows that the inmates are likewise subject to searches without a warrant or probable cause").  Given the context of the allegations here, Plaintiff cannot state a cognizable claim under the Fourth Amendment for seizure or search of his property.

2.    Fourteenth Amendment

Plaintiff alleges that on January 22, 2018, most of Plaintiff's personal property was confiscated, including a wide variety of items not precluded by section 4350 such as food items, utensils, papers, toiletries, etc.  (FAC 7.)

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff, 418 U.S. at 5563, and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  Authorized, intentional deprivations of property are actionable under the Due Process Clause.  See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985).  However, the Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation

remedy.  Hudson, 468 U.S. at 533; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

Initially, to the extent that Plaintiff's property was physically confiscated, there are no allegations that Defendants Ahlin or Price personal participated in the confiscation of his property. Accordingly, all liability as to these defendants would be based on the implementation of section 4350.  Plaintiff's allegation that his electronic items were confiscated pursuant to section 4350 is sufficient to state a claim.

However, Plaintiff's allegation that unidentified officers used section 4350 to confiscate items beyond those allowed by section 4350 fails to state a cognizable claim.  First, as discussed above, there is no allegation that Defendants Ahlin or Price were involved in the confiscation of the property.  Secondly, the confiscation of such property would not be authorized by section 4350 and would therefore be a random, unauthorized deprivation of property for which the state provides an adequate post-deprivation remedy.  Hudson, 468 U.S. at 533 (1984); Barnett, 31 F.3d at 816-17 (California provides an adequate post deprivation remedy for property deprivations).  Plaintiff has failed to state a claim for the deprivation of property other than those items prohibited by section 4350.

## C.    First Amendment

Plaintiff alleges that his ability to create documents and communicate those documents to others is severely limited which violates his right to freedom of speech and freedom of the press under the First Amendment.   Plaintiff also alleges that it interferes with his ability to communicate with the courts and he will be required to retain paper copies of all court filings.

Simply because inmates retain certain rights does not mean that their rights are not subject to restrictions and limitations.  Wolfish, 441 U.S. at 545.  Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system.  Id. at 546.  "There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).  This principle applies equally to pretrial detainees and pretrial detainees do not possess the full range of freedoms as an unincarcerated individual.  Wolfish, 441 U.S. at 546.  "[M]aintaining institutional security and preserving internal

order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id.

An inmate does not retain rights inconsistent with proper incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). This includes those First Amendment rights that are inconsistent with status as a prisoner or with the legitimate penological objectives of the corrections system. Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (U.S. 1977). For example, the Supreme Court has held that freedom of association is among those rights least compatible with incarceration and some curtailment of the freedom must be expected. Overton, 539 U.S. at 132; see also Pell v. Procunier, 417 U.S. 817, 826 (1974) (limitations on press interviews); Thornburgh v. Abbott, 490 U.S. 401, 405 (1989) (regulation allowing rejection of incoming mail that was determined be detrimental to security, good order or discipline of the institution or if it might facilitate criminal activity); Block v. Rutherford, 468 U.S. 576, 591 (1984) (denial of contact visits).

### 1. Lock Down

It is unclear whether Plaintiff is attempting to bring a claim based upon the lock down of the facility around the time that the regulation was implemented. Plaintiff alleges that after the facility was locked down he was unable to contact his attorney or the patient advocate or receive visitors. However, Plaintiff does not have an unfettered right to visitation. Overton, 539 U.S. at 133; Block v. Rutherford, 468 U.S. 576, 586 (1984). Plaintiff's complaint is devoid of any factual allegations regarding the reason for the lock down, but it is reasonable to assume that it was a result of a patient uprising in response to the proposed regulation. The temporary limitation on visitation during a lockdown of the facility to restore order provides a legitimate interest in restoring order at the institution.

Further, while Plaintiff alleges that he was denied all telephone calls, he also alleges that he was able to dictate the complaint in this action over the phone to be typed by a third party. Therefore, any denial of telephone access was temporary and has now been restored. Only where all visitation privileges have been revoked permanently or for a substantial period of time will the deprivation take on constitutional proportions. See Overton, 539 U.S. at 130; Dunn v. Castro,

621 F.3d 1196, 1204 (9th Cir. 2010).

The length of time a deprivation continues is relevant to determining whether the deprivation amounts to punishment. See Pierce v. Cty of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008) (criminal detainee's length of stay in jail was one factor in determining whether Fourteenth Amendment violation had occurred); Sisneroz v. Whitman, No. CV F 01-5058 2008 WL 4966220, at *9 (E.D. Cal. Nov. 20, 2008) (finding that "constitutional deprivation arises from systematic, substantial deprivation" and that some amenities "may be unavailable [to SVPs] for short periods of time for various reasons" without taking on constitutional proportions).

Here, Plaintiff alleges that the lockdown was implemented on January 13, 2018. (FAC 12.) Based on the allegations in the complaint, Plaintiff has now been taken off lockdown and allowed telephone access. (FAC 13-14.) There are no allegations that Plaintiff continues to be subjected to systematic substantial deprivations or that any such restrictions were permanent. Plaintiff fails to state a claim based upon the lock down of the facility.

2. Freedom of the Press and Freedom of Speech

Here, Plaintiff alleges that the confiscation of his devices deprives him of freedom of the press and freedom of speech. The First Amendment protects the right of the press to gather news and information. California First Amendment Coal. v. Calderon, 150 F.3d 976, 981 (9th Cir. 1998). The Supreme Court has held that the press has "no constitutional right of access to prisons or their inmates beyond that afforded the general public." California First Amendment Coal., 150 F.3d at 981 (quoting Pell v. Procunier, 417 U.S. 817, 834 (1974)). While Plaintiff alleges that section 4350 limits his ability to create documents and communicate those documents to others, this is insufficient to state a claim that would implicate freedom of the press.

Further, even if his ability to communicate is limited by his lack of access to electronic devices, the complaint itself demonstrates that Plaintiff has alternate avenues of communication available. Plaintiff has access to a telephone and was able to dictate his complaint so that it could be completed by a third party. Plaintiff has the ability to hand write documents. Plaintiff has access to a television and radio as well as televisions in the public area which have cable access. The complaint fails to allege facts to state a plausible claim that section 4350 infringes upon

1 Plaintiff's freedom of speech or freedom of the press.

2        3.    <u>Access to Courts</u>

3       To the extent that Plaintiff alleges that his access to the Court has been impeded he fails to

4 state a cognizable claim. The Constitution guarantees detained people, including civil detainees,

5 meaningful access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977) (prisoners); <u>Hydrick</u>,

6 500 F.3d at 990 (civil detainees); <u>Cornett v. Donovan</u>, 51 F.3d 894, 898 (9th Cir. 1995) ("right of

7 access [to the courts] is guaranteed to people institutionalized in a state mental hospital.) Detainees

8 and prisoners have the right to pursue claims that have a reasonable basis in law or fact without

9 active interference by prison officials. <u>See</u> <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1103-04 (9th Cir.

10 2011) (finding that repeatedly transferring the plaintiff to different prisons and seizing and

11 withholding all his legal files constituted active interference) overruled on other grounds by

12 <u>Coleman v. Tollefson</u>, 135 S.Ct. 1759 (2015); <u>see</u> <u>also</u> <u>Jones</u>, 393 F.3d at 936 (applying this

13 standard to a detainee awaiting civil commitment proceedings). This forbids state actors from

14 erecting barriers that impede the right of access to the courts of incarcerated persons. <u>Silva</u>, 658

15 F.3d at 1102 (internal quotations omitted). However, to state a colorable claim for denial of access

16 to the courts, Plaintiff must allege that he suffered an actual injury in the pursuit of the litigation

17 of direct criminal appeals, habeas petitions, and civil rights actions. <u>Lewis</u>, 518 U.S. at 351.

18 "Actual injury" means a "specific instance in which an inmate was actually denied access to the

19 courts." <u>Sands v. Lewis</u>, 886 F.2d 1166, 1171 (9th Cir. 1989) overruled on other grounds by <u>Lewis</u>

20 <u>v. Casey</u>, 518 U.S. 343, 350 (1996)).

21       The right of access, furthermore, does not guarantee any "particular methodology but rather

22 the conferral of a capability — the capability of bringing contemplated challenges to sentences or

23 conditions of confinement before the courts." <u>Phillips v. Hust</u>, 588 F.3d 652, 655 (9th Cir. 2009)

24 (quoting <u>Lewis</u>, 518 U.S. at 356). Similarly, a prisoner claiming that his right of access to the

25 courts has been violated due to inadequate library access must show that (1) access was so limited

26 as to be unreasonable; and (2) the inadequate access caused actual injury. <u>Vandelft v. Moses</u>, 31

27 F.3d 794, 797 (9th Cir. 1994).

28       Plaintiff has failed to allege that he has been denied access to pursue his legal claims or

that he has suffered actual injury. Plaintiff complains that his legal paperwork and research is saved on electronic devices and that he is denied access due to having such devices confiscated, however, Plaintiff fails to allege that he is unable to maintain his legal work in paper format, or that he is precluded from access to the law library other than a temporary denial during the lockdown of the facility. Further, while Plaintiff alleges that he is unable to type his complaints, the Courts regularly consider handwritten complaints from prisoners proceeding pro se. Finally, while Plaintiff alleges that he may have to drop pursuit of his civil actions, this is insufficient to demonstrate actual injury. Plaintiff fails to state a plausible access to the court claim.

### D. Takings Clause

Plaintiff contends that his property has been taken without just compensation alleging an unconstitutional taking. The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation. The Takings Clause of the Fifth Amendment "limits the government's ability to confiscate property without paying for it," and "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal quotations and citation omitted). The Takings Clause has been applied to two types of governmental action, the taking of physical possession or control of property for public use, and regulations prohibiting private use of property. Tahoe-Sierra Preservation Counsel. Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 321-22 (2002). To state a claim, a plaintiff must allege that his property was taken for a public purpose. See Kelo v. City of New London, Connecticut, 545 U.S. 469, 477-80 (2005).

Plaintiff's contention that his property was confiscated as contraband does not plausibly allege that the government confiscated his property for a public purpose. On the contrary, Plaintiff's complaint demonstrates that the property shall be sent to the custodian of Plaintiff's choice as long as no illegal material is involved. Plaintiff has failed to state a claim under the takings clause of the Fifth Amendment.

### E. Declaratory Relief

Plaintiff seeks an order declaring his constitutional rights. "A case or controversy exists

justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." Feldman v. Bomar, 518 F.3d 637, 642 (9th Cir. 2008) (quoting Headwaters, Inc. v. Bureau of Land Management, Medford Dist., 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." U.S. v. State of Wash., 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

In the event this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary in this action. The Court recommends that Plaintiff's request for declaratory relief be dismissed.

### F. Plaintiff May Not Bring this Action on Behalf of Other Civil Detainees

Plaintiff brings this action seeking an injunction for all similarly situated individuals. Pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions and other documents on behalf of other detainees. See Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.' ").

Additionally, Federal Rule of Civil Procedure 23 requires that a party representing a class must be able to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a). The ability to protect the interests of the class depends on the quality of counsel representing the class members. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). The competence of a layman in representing himself is too limited to allow him to risk the rights of others, therefore, an inmate proceeding without the assistance of counsel cannot represent other inmates in a class action. Oxendine, 509 F.2d at 1407. "This rule is an outgrowth not only of the belief that a layman, untutored in the law, cannot 'adequately represent' the interests of the members of the 'class,' but also out of the long-standing general prohibition against even attorneys acting as both class

representative and counsel for the class." Huddleston v. Duckworth, 97 F.R.D. 512, 514 (N.D. Ind. 1983). Plaintiff cannot prosecute this action to receive relief for other inmates.

### H. Nature of Action against Defendants

Here, Plaintiff alleges that he is bringing claims against Defendants Ahlin and Price in their individual and official capacities. The court looks to the basis of the claims asserted and the nature of the relief sought to determine if the claims are asserted against the defendants in their individual or official capacity. Cent. Reserve Life of N. Am. Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988).

Personal capacity suits seek to impose individual liability on the government official for actions taken under the color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991). To state an individual capacity claim, the plaintiff must show that the actions of the defendant caused the deprivation of a federal rights. Id.

An official capacity suit on the other hand is equivalent to a suit against the state itself alleging that the agency's policy or custom played a part in the violation of federal law. Hafer, 502 U.S. at 25. Further, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

The complaint filed here does not contain any allegations that the named defendants engaged in any individual wrongdoing. Plaintiff alleges that the named defendants are responsible for implementing a policy that prohibits him from possessing certain electronic devices. Plaintiff is attempting to hold the defendants liable for official policies and procedures that are implemented by the Department of State Hospitals. Additionally, Plaintiff does not seek monetary damages, but is seeking declaratory and injunctive relief. The allegations in the complaint state a claim against the defendants in their official capacities. Accordingly, the Court finds that this action should proceed against Defendants Ahlin and Price in their official capacities and the individual capacity claims should be dismissed.

/ / /

/ / /

# IV.

## CONCLUSION AND RECOMMENDATION

Plaintiff's complaint states a condition of confinement and deprivation of property claim against Defendants Ahlin and Price for implementing the amendments to section 4350 and a claim that the regulation is overly broad by prohibiting devices that are not capable of connecting to the internet and have no memory storage ability. However, Plaintiff has not sufficiently alleged facts to state any other cognizable claims. Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's first amended complaint is largely identical to the original complaint. Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support the claims alleged in the first amended complaint, and further amendment would be futile. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may not deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint against Defendants Ahlin and Price in their official capacity for a condition of confinement and deprivation of property claim for implementing the amendments to section 4350 and a claim that the regulation is overly broad by prohibiting devices that are not capable of connecting to the internet and have no memory storage ability;

2. The individual capacity claims be dismissed for failure to state a claim;

3. All other claims be dismissed for failure to state a claim; and

4. Plaintiff's request for declaratory relief be dismissed.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate

Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 17, 2018**

UNITED STATES MAGISTRATE JUDGE