1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY WILLIAMS, | Case No. 1:18-cv-00102-NONE-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSING THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |
| v. | |
| BRANDON PRICE, et al., | |
| Defendants. | |
| | (ECF Nos. 62, 70, 72) |
| | OBJECTIONS DUE WITHIN THIRTY DAYS |

Corey Williams ("Plaintiff"), a civil detainee, is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is Brandon Price and Pam Ahlin's ("Defendants") motion for judgment on the pleadings, filed on February 21, 2020.  Also before the Court is Plaintiff's third amended complaint which was filed in this action after it was consolidated with a related case, Williams v. Price ("Williams III), No. 1:20-cv-00312-JLT.

The matter was referred to the United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following findings and recommendations.

## I.

## RELEVANT BACKGROUND

Plaintiff is a civil detainee at Coalinga State Hospital ("CSH") facing commitment as a

1

sexually violent predator ("SVP") under California's Sexually Violent Predator Act ("SVPA"), California Welfare and Institutions Code, section 6600 et seq.  (See Sec. Am. Compl. ("SAC") 1,[1] ECF No. 31.)  In 2003, the Department of State Hospitals ("DSH") enacted section 891 of title 9 of the California Code of Regulations.  (See SAC, Exh. 1.)  Section 891 states, "Non-LPS patients shall not have access to the internet."

On October 26, 2009, the DSH enacted section 4350 of title 9 of the California Code of Regulations.  (See SAC, Exh. 2.)  At that time, as relevant here, Section 4350 stated:

> Electronic devices with the capability to connect to a wired . . . and/or a wireless . . . communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication. . . .  Some examples of the prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators, and radios (satellite, shortwave, CB and GPS).

(See id.)

On December 22, 2017, the DSH issued a Notice of Emergency Amendments and Findings of Emergency for section 4350.  (See SAC, Exh. 3.)  An additional notice was issued around January 10, 2018.  (See SAC, Exh. 4.)  In relevant part, the amended section 4350 states:

> (a) [P]atients are prohibited from having personal access to, possession, or on-site storage of the following items:
>
> (1) Electronic devices with the capability to connect to a . . . and/or a wireless . . . communications network to send and/or receive information including, but not limited to, the following:
>
> (A) Desktop computers; laptop computers; tablets, single-board computers or motherboards such as "Raspberry Pi;" cellular or satellite phones; personal digital assistant (PDA's); graphing calculators; and satellite, shortwave, CB and GPS radios.
>
> (B) Devices without native capabilities that can be modified for network communication.  The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change.
>
> (2) Digital media recording devices, including but not limited to CD, DVD, Blu-Ray burners.
>
> (3) Voice or visual recording devices in any format.
>
> (4) Items capable of patient-accessible memory storage, including but not limited

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

to:

(A) Any device capable of patient-accessible digital memory or remote memory access.

(B) Recordable disks, including but not limited to CDs, DVDs, Blu-Ray, and CD-ROM.

(C) Universal Serial Bus (USB) devices, also known as flash drives or thumb drives.

(D) Hard drives, subscriber identity module (SIM) cards, secure digital (SD) drives or cards, micro-secure digital drives or cards (MicroSD), compact flash drives, secure digital high capacity (SDHC), secure digital extended capacity (SHXC), and other similar insertable memory devices.

(E) Gaming devices with patient-accessible digital memory storage ability, the ability to access the internet, or the ability to play games or other media or access data not specifically designed for the device, or only able to be played on that particular gaming device, as provided by an approved third-party vendor.

(F) Floppy disks, hard disks, and vertical helical scan or video home system (VHS) cassettes.

(b) Electronic items that do not conflict with subsection (a) that patients are permitted to possess or have personal access to include:

(1) One (1) television or computer monitor; one (1) DVD, Blu-ray, or similar player; one (1) CD player; and one (1) radio or music player. These items shall not have internet, external communication, or wireless communication capability.

(2) No more than thirty (30) commercially manufactured and unmodified CDs, DVDs, and Blu-Rays received in factory-original packaging in a patient's room or unit storage. Patient may store additional manufactured and unmodified CDs, DVDs, and Blu-Rays in off-unit storage.

(3) Tablets or other devices designed for confined individuals through authorized vendors of the Department of State Hospitals and California Department of Corrections and Rehabilitation that do not contain personally accessible data storage.  If a device designed for confined individuals is modified, either the individual device or the type of device can be banned as violating subsection (a).

Cal. Code Regs. tit. 9, § 4350.

Plaintiff filed this action on January 22, 2018, against Defendants Price and Ahlin alleging his constitutional rights were violated by the emergency amendments to Cal. Code Regs. tit. 9, § 4350.  (ECF No. 1.)  On March 7, 2018, United States Magistrate Judge Michael J. Seng screened Plaintiff's complaint and found that it stated a substantive due process claim.  (ECF No. 11.) Plaintiff was ordered to either file an amended complaint or notify the Court that he wished to proceed on the claims found to be cognizable in the screening order.  (Id.)  On April 3, 2018,

following the retirement of Judge Seng, this matter was reassigned to the undersigned.  (ECF No. 14.)

On April 5, 2018, the Court directed the Office of the Attorney General to make a special appearance to address Plaintiff's request for a preliminary injunction with a response due within fourteen days.  (ECF Nos. 3, 16.)  After receiving an extension of time, Plaintiff filed a first amended complaint on April 6, 2018.  (ECF No. 17.)  Plaintiff's complaint was screened on April 18, 2018 and findings and recommendations were filed.  (ECF No. 18.)  The undersigned found that Plaintiff had stated a claim against Defendants Ahlin and Price in their official capacity for a condition of confinement and deprivation of property claim for implementing the amendments to section 4350 and a claim that the regulation is overly broad by prohibiting devices that are not capable of connecting to the internet and have no memory storage ability and recommended that all remaining claims be dismissed for failure to state a claim.  (Id.)

The Attorney General filed a response to Plaintiff's request for a preliminary injunction on April 30, 2018.  (ECF No. 21.)  On May 15, 2018, findings and recommendations issued recommending denying Plaintiff's request for a preliminary injunction.  (ECF No. 22.)  On July 19, 2018, Chief Judge Lawrence J. O'Neill (since retired) issued an order adopting in full the findings and recommendations recommending denying Plaintiff's request for a preliminary injunction and adopting in part the screening findings and recommendations.  (ECF No. 27.)  The order found that Plaintiff had stated a substantive due process claim against Defendants Ahlin and Price in their official capacities for implementing the amendments to section 4350 and Plaintiff was ordered to either file a second amended complaint or notify the court that he wished to proceed on the cognizable claims and Plaintiff's motion for a preliminary injunction was denied.  (Id.)

After receiving an extension of time, Plaintiff filed a second amended complaint on September 20, 2018.  (ECF No. 31.)  On September 28, 2018, findings and recommendations issued.  (ECF No. 32.)  The findings and recommendations recommended that this action proceed against Defendants Ahlin and Price for substantive due process violations of the Fourteenth Amendment based on the allegations that the amendment to section 4350 is punitive in nature and the regulation is overly broad as it prohibits devices not capable of connecting to the internet or having memory

storage capability; and on the procedural due process claim against Defendant Price for implementing a policy more restrictive than section 4350, and that all other claims be dismissed without leave to amend.  (Id.)

On November 9, 2018, Chief Judge O'Neill adopted in part the findings and recommendations.  (ECF No. 35.)  This action proceeded against Defendants Ahlin and Price in their official capacity for implementing the amendments to section 4350 in violation of substantive due process.  (Id. at 3.)

On January 25, 2019, Defendants filed a motion to dismiss and a request for judicial notice.  (ECF Nos. 44, 45.)  On March 14, 2019, findings and recommendations issued recommending denying Defendants motion to dismiss.  (ECF No. 49.)  On May 8, 2019, Chief Judge O'Neill adopted the findings and recommendations and Defendants' motion to dismiss was denied.  (ECF No. 55.)  Defendants filed an answer on May 28, 2019.  (ECF No. 56.)  On May 29, 2019, the discovery and scheduling order issued setting pretrial deadlines.  (ECF No. 57.)

On February 21, 2020, Defendants filed the instant motion for judgment on the pleadings and a request for judicial notice.  (ECF No. 62.)

On March 2, 2020, Plaintiff filed Williams III, No. 1:20-cv-00312-JLT against Defendants Price, Ahlin, Arron Maylin, Samantha Sanchez, and Joanne Brewer based on the confiscation of his property due to the amendments to section 4350.

On March 5, 2020, an order issued granting Defendants' request to vacate the dispositive motion deadlines in the May 29, 2019 scheduling order to be reset once the instant motion is decided.  (ECF Nos. 63, 64.)  Plaintiff received an extension of time to file his opposition to the motion for judgment on the pleadings and his opposition was due on May 30, 2020.  (ECF Nos. 65, 66.)  Plaintiff did not file an opposition.  On June 9, 2020, an order issued requiring Defendants to supplement the record.  (ECF No. 66.)

On July 6, 2020, an order was entered relating Williams III with the instant action.  (ECF 71.)  Defendants filed supplemental briefing on July 9, 2020.  (ECF No. 70.)  On July 20, 2020, an order issued consolidating this action and Williams III.  (ECF No. 71.)  The March 20, 2020 complaint from Williams III was filed in this action as a third amended complaint.  (ECF No.

72.)

Pursuant to Local Rule 230(l), this matter is deemed submitted on the pleadings without oral argument.

## II.

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### A.   Legal Standard

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Hal Roach Studios, Inc., v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989); Fajardo v. Cty. of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999); accord Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). "A motion for judgment on the pleadings 'challenges the legal sufficiency of the opposing party's pleadings.' " RLI Ins. Co. v. City of Visalia, 297 F.Supp.3d 1038, 1046 (E.D. Cal. 2018), aff'd, 770 F. App'x 377 (9th Cir. 2019) (quoting Morgan v. County of Yolo, 436 F.Supp.2d 1152, 1154–55 (E.D. Cal. 2006), aff'd, 277 Fed.Appx. 734 (9th Cir. 2008)).

The analysis under Rule 12(c) operates in the same manner as a motion to dismiss under Rule 12(b)(6). Chavez, 683 F.3d at 1108 ("Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy") (internal quotation marks and citation omitted). "A district court will render a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.' " Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997) (citations omitted).

In deciding a motion for judgment on the pleadings, the court accepts as true all allegations in the complaint and treats as false those allegations in the answer that contradict the complaint.

1  Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 (9th Cir. 2004); Hal Roach Studios, Inc.,

2  896 F.2d at 1550.  The court construes all material allegations in the light most favorable to the

3  non-moving party.  Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1046 (9th Cir.

4  2006).  Judgment on the pleadings can only be granted where the pleadings demonstrate that it

5  is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

6  entitle him to relief."  Enron Oil Trading & Transp. Co., 132 F.3d at 529 (citations omitted).

7       Documents attached to, incorporated by reference in, or integral to the complaint may be

8  properly considered under Rule 12(c) without converting the motion into one for summary

9  judgment.  Rose v. Chase Manhattan Bank USA, 396 F.Supp.2d 1116, 1119 (C.D. Cal. 2005)

10  (citing GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

11  However, judgment on the pleadings is improper when the district court goes beyond the

12  pleadings to resolve an issue; such a proceeding must properly be treated as a motion for

13  summary judgment.  Hal Roach Studios, 896 F.2d at 1550.  In deciding a motion for judgment

14  on the pleadings, the court may consider facts that "are contained in materials of which the court

15  may take judicial notice."  Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th

16  Cir. 1999).

17       **B.      Request for Judicial Notice**

18       Defendants request that the Court take judicial notice of sections of the California Code of

19  Federal Regulations, DSH and Office of Administrative law notices regarding the amendment

20  of section 4350, memorandums from Defendant Price and the Fresno County District Attorney's

21  Office, and court records.  Defendant has not opposed the request for judicial notice.

22       Generally, the court may not consider any material outside the pleadings in ruling on a

23  motion under Rule 12 without converting the motion to a motion for summary judgment.  United

24  States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011).  There are two exceptions to

25  this rule, when the complaint necessarily relies on the documents or where the court takes judicial

26  notice of documents.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  Under the

27  Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute

28  in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

1  capable of accurate and ready determination by resort to sources whose accuracy cannot
2  reasonably be questioned." Fed. R. Evid. 201(b).

3      Defendants seek for the Court to take judicial notice of California regulations, certain
4  documents on the DSH website, and court records. These documents are appropriate for judicial
5  notice. Judicial notice may be taken "of court filings and other matters of public record." Reyn's
6  Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d at 689.
7  Courts may take judicial notice of information displayed on government websites where neither
8  party disputes the accuracy of the information contained therein. Daniels –Hall v. National Educ.
9  Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).

10     The January 12, 2018, and January 18, 2018 memorandums from Defendant Price were
11  referenced to and incorporated within Plaintiff's complaint. (See Sec. Am. Compl. at p. 3, 15
12  ECF No. 31.) The January 16, 2018 memorandum to all patients, staff, and law enforcement
13  from the Fresno County District Attorney's Office is self-authenticating under Rule 902(5) of
14  the Federal Rules of Evidence. Accordingly, Defendants request for judicial notice is granted.

15     **C.   Discussion**

16     Defendants move for judgment on the pleadings on the ground of *res judicata*. Defendants
17  contend that Plaintiff previously litigated the issue of the confiscation of his electronic devices
18  in state court and the dismissal of the state court action should be given full faith and credit and
19  this action should be dismissed. Plaintiff has not filed an opposition to the motion.

20     1.   *Res Judicata* Legal Standard

21     Generally, the preclusive effect of a prior judgment is referred to as *res judicata*. Taylor
22  v. Sturgell, 553 U.S. 880, 892 (2008); Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir.
23  1988). *Res judicata* includes both claim preclusion and issue preclusion. Americana Fabrics,
24  Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir. 1985); Robi, 838 F.2d at 321. Claim
25  preclusion, which is at issue here, treats a judgment that has been previously entered as the full
26  measure of relief between the same parties on the same claim or cause of action and prevents
27  relitigation for all grounds of recovery or defenses that were previously available to the parties
28  regardless of whether they were asserted or decided in the prior proceeding. Americana Fabrics,

1   Inc., 754 F.2d at 1529; Robi, 838 F.2d at 321-22; Owens v. Kaiser Found. Health Plan, Inc., 244

2   F.3d 708, 713 (9th Cir. 2001)

3        *Res judicata* applies where there is identity of claims, final judgment on the merits, and

4   identity or privity between the parties.  Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir.

5   2002); Owens, 244 F.3d at 713.  Although *res judicata* is an affirmative defense, a court may

6   dismiss an action on *res judicata* grounds based upon the facts alleged in the complaint and any

7   facts that are properly subject to judicial notice.  See Scott v. Kuhlmann, 746 F.2d 1377, 1378

8   (9th Cir. 1984).  *Res judicata* is properly raised in a motion for judgment on the pleadings.  See,

9   e.g., Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 920 (9th Cir. 2012).

10       "Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, 'a federal court must

11  give to a state-court judgment the same preclusive effect as would be given that judgment under

12  the law of the State in which the judgment was rendered.' "  Takahashi v. Bd. of Trustees of

13  Livingston Union Sch. Dist., 783 F.2d 848, 850 (9th Cir. 1986) (quoting Migra v. Warren City

14  Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)); see also Clark v. Yosemite Cmty. Coll. Dist.,

15  785 F.2d 781, 784 (9th Cir. 1986).  Therefore, California law determines the preclusive effect of

16  the state court judgment.

17       Under California law, claim preclusion is the "primary aspect" of *res judicata* and "acts to

18  bar claims that were, or should have been, advanced in a previous suit involving the same

19  parties."  DKN Holdings LLC v. Faerber, 61 Cal.4th 813, 824 (2015).  "Claim preclusion arises

20  if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a

21  final judgment on the merits in the first suit."  DKN Holdings LLC, 61 Cal.4th at 824.  "If claim

22  preclusion is established, it operates to bar relitigation of the claim altogether."  Id.; see also

23  Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 792 (2010) ("The doctrine of *res judicata*

24  prohibits a second suit between the same parties on the same cause of action.")

25       "The party asserting preclusion bears the burden of showing with clarity and certainty what

26  was determined by the prior judgment."  Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th

27  Cir. 1992).  "It is not enough that the party introduce the decision of the prior court; rather, the

28  party must introduce a sufficient record of the prior proceeding to enable the trial court to

1  pinpoint the exact issues previously litigated."  United States v. Lasky, 600 F.2d 765, 769 (9th

2  Cir. 1979).

3          2.      Plaintiff's March 14, 2019 State Action

4          Plaintiff filed an action, Williams v. Price, No. 19 CE CL 02848 (Fresno Cty. Sup. Ct.)

5  (here after "Williams II"), alleging loss of property in the Superior Court for the State California,

6  Fresno County, on March 14, 2019.  (ECF No. 6201 at pp. 111-13.)  Plaintiff alleged that he was

7  an inpatient at the Department of State Hospitals, Coalinga from 2008 to present.  (Williams II

8  Compl. at ¶ 2.)  Defendant Price was an individual employed at Coalinga State Hospital.  (Id. at

9  ¶ 3.)

10         On January 18, 2028, Plaintiff was removed from his housing unit and placed outside while

11  unidentified officials searched and confiscated his property at the direction of Defendant Price.

12  (Id. at ¶¶ 5, 6.)  Plaintiff's property was confiscated due to the new revision of California Welfare

13  & Institutions Code section 4350.  (Id. at ¶ 7.)  When Plaintiff returned to his room, all his

14  property was gone and three property receipts were left on Plaintiff's bed.  (Id. at ¶ 8; Property

15  Receipts, (ECF No. 62-1 at 115, 116, 117.)  Plaintiff filed a complaint with the Office of Risk

16  Management to attempt to get his property back that was denied on August 2, 2018.  (Williams

17  II Compl. at ¶ 9.)

18         Plaintiff was seeking to recover the value of his property that was confiscated as it was

19  now deemed contraband by the newly amended state regulation.  (Id. at ¶ 11.)  Plaintiff alleged

20  that the property had been taken in violation of the Takings Clause of the Fifth Amendment of

21  the United States Constitution.  (Id. at ¶ 13.)  Plaintiff sought a declaration that Defendant Price's

22  actions and practices were in violation of state law and the regulations, and compensatory

23  damages of $3,736.25.  (Id. at ECF No. 62-1, p. 113.)

24         Defendant Price filed a demurrer on the grounds the complaint failed to state a cause of

25  action against him under the Takings Clause of the Fifth Amendment of the United States

26  Constitution; Defendant Price was not a proper defendant for the Fifth Amendment claim; the

27  complaint failed to state a cause of action under the Takings Clause of the California

28  Constitution; Plaintiff failed to comply with the limitations period of the California Code of Civil

1  Procedure, section 430.10(e); and the complaint was subject to abatement pursuant to California

2  Code of Civil Procedure section 430.10(c).  (Def. Price's Demurrer to Compl. at 4-20, ECF No.

3  70-1.)  Plaintiff filed an opposition to the demurrer arguing that there had been a regulatory

4  taking of his property; he had a property interest in the property; the taking was for a public

5  purpose, to combat an epidemic of child pornography; and that Defendant Price was the moving

6  force behind the amended regulation.  (Pl.'s Opp. to Def.'s Demurrer, ECF No. 70-1 at 22-34.)

7  Defendant Price filed a reply contending that Plaintiff did not have a constitutionally protected

8  property interest in possessing contraband electronic devices and that his devices were properly

9  confiscated under section 4350, and that the complaint could not be amended to cure the

10  deficiencies.  (Def.'s Reply to Opp. to Demurrer, ECF No. 70-1 at 38-42.)

11      On November 7, 2019, the matter came on regularly for hearing and the Court sustained

12  Defendant's demurrer without leave to amend on all grounds stated in the demurrer.  (ECF No.

13  62-1 at 127-28.)  On January 31, 2020, judgment was entered dismissing the action in favor of

14  Defendant Price.  (ECF No. 62-1 at 129.)  The complaint was dismissed in its entirety as to

15  Defendant Price and the action was dismissed with prejudice.  (Id. at 130.)

16          3.    Preclusive Effect of State Court Judgment

17      In this instance, Defendants have raised claim preclusion as the ground for judgment on

18  the pleadings.  California law determines the preclusive effect of the state court judgment.

19  Takahashi, 783 F.2d at 850.  Under California law, "if a plaintiff prevails in an action, the cause

20  is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the

21  defendant serves as a bar to further litigation of the same cause of action."  Mycogen Corp. v.

22  Monsanto Co., 28 Cal.4th 888, 896-97 (2002).  Under this *res judicata* doctrine, "all claims

23  based on the same cause of action must be decided in a single suit; if not brought initially, they

24  may not be raised at a later date."  Mycogen Corp., 28 Cal.4th at 897.  "*Res judicata* precludes

25  piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action

26  on a different legal theory or for different relief."  Id. (quoting Weikel v. TCW Realty Fund II

27  Holding Co., 55 Cal.App.4th 1234, 1245 (1997)).  Therefore, under California law, claims

28  preclusion bars "(1) the same cause of action (2) between the same parties (3) after a final

1  judgment on the merits in the first suit." DKN Holdings LLC, 61 Cal.4th at 824 Mycogen Corp.,
2  28 Cal.4th at 897.

3        a.      **Whether the cause of action involves the same primary right**

4        Defendants argue that *res judicata* should apply because Plaintiff's state court action
5  against Defendant Price was for the same harm arising from the same events.  To determine
6  whether the two suits involve identical causes of action for the purposes of claim preclusion,
7  California applies a "primary rights theory.  Boeken, 48 Cal.4th at 797.  For the purposes of
8  claim preclusion, the phrase "cause of action" has a precise meaning.  Id. at 798.  "The cause of
9  action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought
10 or the legal theory (common law or statutory) advanced."  Id.; see also Hi-Desert Med. Ctr. v.
11 Douglas, 239 Cal.App.4th 717, 734 (2015), as modified (Sept. 15, 2015) ("The fact that the
12 [plaintiff] may be pursuing or adding a different remedy for the same injury does not create a
13 new primary right.").  "Even where there are multiple legal theories upon which recovery might
14 be predicated, one injury gives rise to only one claim for relief."  Boeken, 48 Cal.4th at 798.
15 Therefore, the determinative factor under the primary rights theory is the harm suffered, and
16 where two actions involve the same parties and are seeking the same compensation for the same
17 harm, they generally involve the same primary right.  Id.

18       "[T]he primary right is simply the plaintiff's right to be free from the particular injury
19 suffered" and is distinguishable from the legal theory on which liability is established.  Mycogen
20 Corp., 28 Cal.4th at 904.  One injury gives rise to only one claim for relief.  Id.  Under the
21 "primary rights" theory "the significant factor is the harm suffered; that the same facts are
22 involved in both suits is not conclusive."  Agarwal v. Johnson, 25 Cal.3d 932, 954–55 (1979),
23 disapproved of on other grounds by White v. Ultramar, Inc., 21 Cal.4th 563 (1999).)  However,
24 the harm suffered is to be distinguished from the remedy sought and the same primary right may
25 entitle a plaintiff to multiple forms of relief.  Mycogen, 28 Cal.4th at 904.

26       In state court, Plaintiff alleged that he had been harmed by having his electronic property
27 confiscated due to the new revision of California Welfare & Institutions Code section 4350.  The
28 primary right sought to be vindicated was Plaintiff's right to possess his property, specifically

his electronic property, under section 4350.  Plaintiff contended that Defendant Price was the moving force behind the amendment of section 4350.  Accordingly, Plaintiff was required to bring all causes of action to vindicate his right to possess this property in the same lawsuit regardless of the legal theory under which recovery was sought or the relief requested.  Boeken, 48 Cal.4th at 797; Mycogen Corp., 28 Cal.4th at 897.  Therefore, the state court judgment precludes all further suits seeking to recover for the loss of Plaintiff's electronic property pursuant to section 4350.

In the instant action, Plaintiff is alleging that he was harmed because his electronic property, the same property that was identified in the state court action, was confiscated because it had been determined to be contraband under the amendments to section 4350.  Although the state court action alleged a violation of the Takings Clause of the Fifth Amendment and Plaintiff was seeking monetary damages, and the instant action alleged additional causes of action and seeks injunctive relief, under California law, Plaintiff was required to bring all his legal theories of recovery and any requests for relief in the same lawsuit.  Boeken, 48 Cal.4th at 798; Mycogen Corp., 28 Cal.4th at 904; DKN Holdings LLC, 61 Cal.4th at 824.  The claims that Plaintiff is attempting to litigate in this lawsuit are the same claims involving the same primary right that was raised or were required to be raised in the state court action and are entitled to *res judicata* under California law.

          **b.**       **Whether the suit involves the same parties or those in privity**

Defendants argue that the state court and this action both name Defendant Price as a defendant.  Defendants acknowledge that Defendant Ahlin is only named in this action, but do not address how this impacts the decision as to whether to apply *res judicata*.  Plaintiff has not argued that privity is lacking in this instance.

In the current action Plaintiff alleges that Defendant Price is the Executive Director of CSH and Defendant Ahlin is the Director of the DSH.  (Sec. Am. Compl. 1, ECF No. 31.)  Defendant Ahlin signed and submitted amended section 4350 to the Office of Administrative Law ("OAL").  (Id.; January 12, 2018 Notice Publication/Regulation Submission, ECF No. 62-1 at 68.)  Defendant Price was responsible for implementing section 4350 at CSH.  (Sec. Am. Compl. 1;

1   January 12, 2018 Memorandum from Defendant Price Regarding Emergency Regulation
2   Approval, ECF No. 62-1 at 73-72; January 18, 2018 Memorandum from Defendant Price
3   Regarding Implementation of the Emergency Regulation, ECF No. 62-1 at 82-83.)   Plaintiff
4   alleges that his property was confiscated because it is now considered contraband due to the
5   amendment of section 4350 and that Defendant Price confiscated property that was beyond the
6   scope of the amended regulation.

7        Plaintiff's state court action alleged that Defendant Price had Plaintiff's property
8   confiscated due to the new revisions to section 4350.  (Williams II Compl., ¶ 7.)  The state court
9   considered Defendant Price's demurrer and it was sustained without leave to amend on all
10   grounds stated in Defendant's demurrer.  (ECF No. 62-1 at 127-28.)  The action was dismissed
11   with prejudice.  (Id. at 129-30.)

12        "Under the doctrine of *res judicata*, . . . a judgment for the defendant serves as a bar to
13   further litigation of the same cause of action."  Mycogen Corp., 28 Cal.4th at 896–97.  Claim
14   preclusion applies where the party "against whom the doctrine is being asserted was a party or
15   in privity with a party to the prior adjudication."[2]  In re Anthony H., 129 Cal.App.4th 495, 503
16   (2005).  "[P]rivity requires the sharing of 'an identity or community of interest,' with "adequate
17   representation' of that interest in the first suit, and circumstances such that the nonparty 'should
18   reasonably have expected to be bound' by the first suit."  DKN Holdings LLC, 61 Cal.4th at 826
19   (quoting Clemmer v. Hartford Insurance Co., 22 Cal.3d 865, 875 (1978)).  Privity requires "a
20   relationship between the party to be estopped and the unsuccessful party in the prior litigation
21   which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel.' "
22   Consumer Advocacy Grp., Inc. v. ExxonMobil Corp., 168 Cal.App.4th 675, 689 (2008) (quoting

23
24   [2] Courts have held that the same party or privity requirement "only applies to the party or parties against whom *res judicata* is asserted, rather than the party who raises the defense."  Lodgepole Investments, LLC v. Barsky, No. 15-CV-00549-KAW, 2015 WL 1306849, at *6 (N.D. Cal. Mar. 23, 2015); see also Carmel Valley Fire Prot. Dist. v.
25   State of California, 190 Cal.App.3d 521, 535 (1987) (quoting Lerner v. Los Angeles City Board of Education, 59 Cal.2d 382, 398 (1963)); Sommer v. City of Redondo Beach, No. 2:18-CV-08896-SJO-FFM, 2019 WL 2970835, at
26   *4 (C.D. Cal. Mar. 12, 2019) (police officer acting in the scope of his employment and the city are in privity for the purposes of *res judicata*).  But in DKN Holdings, the California Supreme Court explained that courts often use *res*
27   *judicata* to refer to both claim preclusion and issue preclusion which has caused some confusion.  DKN Holdings LLC, 61 Cal.4th at 823.  Claims preclusion requires that the prior action involve the same parties or parties in privity while issue preclusion can be asserted by someone who was not a party to the prior action.  Id. at 824; Daniels v.
28   Select Portfolio Servicing, Inc., 246 Cal.App.4th 1150, 1163-64 (2016).

Rodgers v. Sargent Controls & Aerospace, 136 Cal.App.4th 82, 90–91 (2006)). "[T]he determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate." Id. The "nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's' 'virtual representative' in the first action." DKN Holdings LLC, 61 Cal.4th at 826. In addressing the privity requirement, the California Supreme Court has held,

> It is enough if, as here, the defendants in the present case are employees of the defendants in the previous state case. See [Bernhard v. Bank of America, 122 P.2d 892, 894 (Cal. 1942)]; Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) (affirming the application of res judicata in a case where "[d]ifferent individuals [we]re named defendants in the two suits" because "all [we]re employees of the FCC who participated in the" challenged conduct that led to the alleged injury); Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992) ("Although the two actions name different federal defendants, '[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.'") (citations omitted)).

Valson v. Cates, No. 1:14-CV-01420-DAD-EPG, 2018 WL 6620341, at *6 (E.D. Cal. Dec. 18, 2018), subsequently aff'd sub nom. Valson v. Kelso, No. 19-15381, 2020 WL 3889605 (9th Cir. July 10, 2020).

The requirement that Defendant Ahlin be in privity has been demonstrated in this instance. Defendant Ahlin, as Director of the DSH, was responsible for the revision to section 4350. Defendant Price is employed by the DSH as the executive director at CSH. The current action is alleged against Defendant Ahlin and Defendant Price in their official capacity for implementing the amendments to section 4350 and confiscating Plaintiff's property as it was contraband under the amended regulation. In the small claims action, Plaintiff brought suit against Defendant Price for directing that his electronic items be confiscated because they were classified as contraband under the amendments to section 4350. Plaintiff was seeking to have the court find that Defendant Price's actions and practices were in violation of state law and the regulations which had declared the property contraband and award monetary damages.

Although Plaintiff did not name Defendant Ahlin in the state court action, both actions are based on the same claim that challenges the validity of the regulations and the confiscation of

the property which was due to Defendant Ahlin's actions in implementing the amendments to section 4350. In other words, the harm that Plaintiff was alleging in the state court action was directly due to Defendant Ahlin's implementation of the amendments to section 4350. Defendant Ahlin was the individual responsible for implementing the revision of the regulation itself and Defendant Price was responsible to implement the revision at the institution. Both actions were brought seeking to hold the defendant liable in their official capacity for the amendment to section 4350. The demurrer was brought on the ground that the property was properly confiscated as it was contraband under the amendments to section 4350, and the Court sustained the demurrer. Here, Plaintiff raises the same claims. In these circumstances, the Court finds that Defendant Ahlin's relationship to Plaintiff is " 'sufficiently close' so as to justify application of the doctrine of collateral estoppel.' " Consumer Advocacy Grp., Inc., 168 Cal.App.4th at 689. The requirement that the action be between the same parties or parties in privity is met.

        **c.**        **Whether there was a final decision on the merits in the state action**

The final issue is whether the decision in Williams II is a final decision on the merits. DKN Holdings LLC, 61 Cal.4th at 824. Under California law, "a plaintiff with a claim under $5,000 may choose to bring his action in small claims court rather than superior court." Pitzen v. Superior Court, 120 Cal.App.4th 1374, 1378 (2004) (quoting Code of Civil Proc., §§ 116.220(a), 116.320(a)). Here, Plaintiff's state court claim was filed in small claims court. Initially, the Court considers whether a judgment in small claims court is entitled to the preclusive effects of res judicata.

California provides a speedy, inexpensive procedure that the plaintiff consents to by choosing to file in small claims court. Cook v. Superior Court, San Mateo Cty., 274 Cal.App.2d 675, 678 (1969). California has a clear policy showing that a plaintiff electing to proceed in a small claims court is to be finally bound by an adverse judgment. Cook, 274 Cal.App.2d at 678; Pitzen, 120 Cal.App.4th at 1380. "It is well established that the claim preclusion aspect of the doctrine of res judicata applies to small claims judgments." Pitzen, 120 Cal.App.4th at 1381; see also Allstate Ins. Co. v. Mel Rapton, Inc., 77 Cal.App.4th 901, 914 (2000) ("The judgment

of the small claims court bars a subsequent proceeding on the same cause of action."); United States ex rel. Hyatt v. Mirza, No. 2:17-CV-2125 KJM-KJN, 2018 WL 6653319, at *3 (E.D. Cal. Dec. 19, 2018) ("In California, small claims court judgments are given the same preclusive effect as any other state court judgment.").  It is well established under California law that the judgment on the merits of a small claims court is final and entitled to preclusive effect.  Hawkins v. Bewley Allen Cadillac, 959 F.2d 240 (9th Cir. 1992).  Therefore, the small claims judgment is entitled to *res judicata* effect if it was on the merits and final.

For a decision to be final and on the merits "means that the court must finally resolve the rights of the parties on the substance of the claim, rather than on the basis of a procedural or other rule precluding state review of the merits."  Barker v. Fleming, 423 F.3d 1085, 1092 (9th Cir. 2005); see also Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052, n.4 (9th Cir. 2005) (quoting Semtek International, Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001)) ("only a judgment that 'actually passes directly on the substance of a particular claim before the court ... triggers the doctrine of *res judicata* or claim preclusion' ").

Here, the Court considered the claim that the confiscation of Plaintiff's property was a violation of the Takings Clause of the Fifth Amendment.  The parties argued whether there had been a regulatory taking, whether the taking was for a public purpose and whether Plaintiff had a protected interest in the property.  The state court sustained the demurrer without leave to amend.

The California Supreme Court has held that "[a] dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim."  Kim v. Reins Int'l California, Inc., 9 Cal.5th 73, 91 (2020); see also Boeken, 48 Cal.4th at 793 ("The record before us does not indicate the reason for the dismissal; for purposes of applying the doctrine of *res judicata*, however, a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action."); del Campo v. Kennedy, 491 F.Supp.2d 891, 902 (N.D. Cal. 2006), aff'd, 517 F.3d 1070 (9th Cir. 2008).  The state court dismissal with prejudice was a decision on the merits of Plaintiff's claims.

In the state court action, Plaintiff and Defendant Price both appeared on November 7, 2019

1   for hearing on Defendant's demurrer and the demurrer was sustained without leave to amend.

2   (ECF No. 62-1 at 127-28.)  The state court considered the merits of Plaintiff's claim under the

3   Takings Clause of the Fifth Amendment and granted the demurrer in its entirety and the action

4   was dismissed with prejudice with judgment entered as to Defendant Price on January 31, 2020.[3]

5   (Id. at 129-30.)  The small claims court judgment is a final decision on the merits.  See Cal. Civ.

6   Proc. Code § 116.710.

7          **d.     Conclusion**

8          Plaintiff is alleging the same wrong and the same injury against Defendants Price and Ahlin

9   that were finally decided on the merits in favor of Defendant Price in the state court lawsuit.

10  Although Defendant Ahlin was not named in the state court action, the court finds that she is in

11  privity for the purposes of claims preclusion in the state court action.  Because the same claims

12  are asserted against Defendants Price and Ahlin that were decided in Defendant Price's favor in

13  the state court action, the claims are barred by the doctrine of claims preclusion.  San Diego

14  Police Officers' Ass'n v. San Diego City Employees' Ret. Sys., 568 F.3d 725, 736 (9th Cir.

15  2009).  The Court recommends granting Defendants Price and Ahlin's motion for judgment on

16  the pleadings.

17                              **III.**

18              **SCREENING OF THIRD AMENDED COMPLAINT**

19         The Court screens the Williams III complaint that was filed as a third amended complaint

20  in this action.

21         **A.     Screening Requirement**

22         Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court

23  determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which

24  relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

25  such relief."  28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000)

26

27  [3] Where two actions are pending at the same time that involve the same controversy, the first final judgment that is
    entered renders the issue res judicata in the other court.  Consumer Advocacy Grp., Inc., 168 Cal.App.4th at 684.

28  Therefore, although the state court action was filed after the instant action, the final judgment is res judicata for
    purposes of this still pending action.

(section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

### B.    Allegations in Third Amended Complaint

Plaintiff is a "patient"[4] at Coalinga State Hospital ("CSH"). (Third Am. Compl. ("TAC"),

---

[4] Based on the allegations in the complaint, Plaintiff is a civil detainee confined as a sexually violent predator ("SVP") under California's Sexually Violent Predator Act ("SVPA") which authorizes the civil commitment of "sexually violent predator[s]." See Cal. Welf. & Inst. Code §§ 6600.05, 6604.

1, ECF No. 72.)  Plaintiff brings this action against Brandon Price, Executive Director of CSH; and Pam Ahlin, Director of the DSH; Lt. Aaron Maylin, Department of Police Services; Samantha Sanchez, Unit Supervisor; and Joanne Brewer, Sr. Psychiatric Technician, in their personal and official capacities, alleging that new revisions to section 4350 of Title 15 of the California Code of Regulations which categorize electronics as contraband caused his personal property to be confiscated.  Plaintiff's complaint is comprised largely of argument.  The following factual allegations are included in the third amended complaint.

Defendant Ahlin signed and submitted the newly revised section 4350 to the OAL, and Defendant Price is responsible for the implementation of the newly revised section 4350 at CSH. (TAC at 2.)  Defendants Maylin, Sanchez, and Brewer confiscated Plaintiff's personal property, including property that was beyond the scope of the amended section 4350.  (Id.)  Plaintiff previously brought an action against the named defendants in this court seeking just compensation that was dismissed on the grounds that state remedies were available and because Plaintiff did not first seek relief in the state court.  (Id.)  Plaintiff contends that he is no longer required to exhaust administrative remedies to seek damages under the Takings Clause of the Fifth Amendment.  (Id.)  Plaintiff has since brought a state court action, case no. 19CECL02848, that was dismissed on the ground of untimely filing.  (Id.)  Plaintiff brings a new claim under the takings clause and is not required to seek relief from the state court to file a claim on these grounds.  (Id.)

On January 12, 2018, Plaintiff received a memorandum from Defendant Price regarding an emergency regulation that was approved by the OAL.  (Id. at 3.)  The memorandum informed the patients at CSH that certain electronic devices and items were considered contraband and implementation of the new regulation would begin in the next few weeks.  (Id. at 3-4.)  The

---

A "sexually violent predator" is a "person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  Id. § 6600.  Inmates held during the pendency of SVPA commitment proceedings are civil detainees.  Jones, 393 F.3d at 922.

King v. Cty. of Los Angeles, 885 F.3d 548, 553 (9th Cir. 2018).

regulations make certain of Plaintiff's devices, including multi-media players, mp3 music players, gaming devices such as an Xbox 360 and or Play Station Portable, and graphing calculators contraband.  (Id. at 4.)  Plaintiff contends that the amendment to section 4350 strips him of practically all his electronic devices and he has been allowed to possess these devices for years.  (Id.)

Plaintiff alleges that confiscation of these devices denies him the right to access the courts, play video games, listen to music, watch television shows and movies, pursue his college degree in mathematics, and the restriction placed on allowable property is overly broad and serves no relation to the stated governmental interest of protecting the public from illegal materials (child pornography).  (Id. at 4-5.)  Plaintiff contends that the regulation violates many constitutional provisions, denying him his First Amendment rights to freedom of speech and freedom of the press, his ability to create documents and communicate those documents to others is severely limited, and the regulation severely hampers his right to communicate to the courts which often require that briefs be typewritten.  (Id. at 5.)  Plaintiff will be required to use a state issued thumb drive to do his legal work which will be retained by agents of the state and pursuant to the lab and thumb drive agreement the documents can be reviewed at their leisure.  (Id.)  Plaintiff also contends that he cannot digitally store documents and he will be forced to retain paper copies of his court documents which will create a precarious situation where the defendants could confiscate his property for violating policies regarding fire safety and excessive papers.  (Id.)

CSH is located in a rural area and external antennas are required to be removed from radios.  (Id.)  The regulations forbid Plaintiff from having a television antenna attached to his window in his living quarters.  (Id.)  Plaintiff's room is not fitted with any type of cable or master television distribution system and television and FM radio reception are virtually nonexistent.  (Id.)  Plaintiff relies on his multi-media players and mp3 player for entertainment.  (Id.)  There are two televisions per unit in the housing area for fifty patients.  (Id.)  These televisions receive satellite service, but he cannot get 49 other people to agree on the programing to watch so he cannot enjoy television in the public areas.  (Id.)  The majority of physical altercations in the facility result from disagreements over the public televisions and which programs to watch.  (Id.)

Plaintiff contends that he will have practically no alternative channels of communication available and subjecting him to such conditions would be punitive. (Id. at 6.) Plaintiff is in custody pending civil commitment proceedings and the conditions complained of are punitive in violation of his right to be free of cruel and unusual punishment and also violate the Due Process Clause of the Fourteenth Amendment. (Id.)

Plaintiff also contends that the amendment denies him his rights under the Fourth Amendment. (Id.) Plaintiff contends that the State has granted itself broad police powers to conduct searches for illegal material without a warrant. (Id.) Patients who are in possession of property that is now considered contraband can grant permission for the items to be reviewed for illegal materials. (Id.) If consent is granted and there is no illegal material found on the items, the items may be mailed to a location designated by the patient or stored at the hospital. (Id.) If consent is not granted by the patient to search the contraband items, the hospital shall destroy the items as contraband. (Id.) Plaintiff was given the Hobson's Choice of waiving his Fourth Amendment rights and submitting to an improper and illegal search of his papers and files for illegal materials or refuse to waive his rights and have his property destroyed. (Id. at 6-7.)

On January 22, 2018, Defendants Maylin, Sanchez, and Brewer confiscated most of Plaintiff's personal property. (Id. at 7.) Not only were items within section 4350 confiscated, but food items and supplements, an Xbox 360 console and accessories, keyboard and mouse, and videos and video games were confiscated. (Id.) Much of this property was not within the purview of the revised section 4350. (Id.) Items that were confiscated fall within 4350 but the confiscation is not narrowly tailored to the proffered purpose are a video monitor, graphing calculator, wireless headphones, factory CDs, DVDs and BluRay disks. (Id.) Also within the items confiscated are his Android Tablet and other peripheral items. (Id.) Plaintiff has been allowed to purchase and use this property for more than a decade that is now considered to be contraband. (Id. at 8.) Plaintiff has been deprived of his property without any compensation. (Id.) Plaintiff contends that section 4350 constitutes a physical appropriate of property without just compensation that is per se unconstitutional. (Id.)

Plaintiff contends that this blanket ban on electronic devices capable of reading and writing

to memory devises retroactively deprives owners of lawfully acquired devices without advancing the Governments interest in public safety and it violates the Due Process Clause.  (Id.)  Plaintiff argues there is no reason to believe that taking the devices from patients who have properly used and lawfully possessed them since 2006 is now related to the advancing the State's interest in public safety.  (Id.)  Patients who violate the policy and store illegal material should be dealt with on an individual basis.  (Id.)  The amended section stifles too much constitutionally protected speech to achieve the narrowest of ends.  (Id.)

The new regulation was justified due to the "epidemic of child pornography" at CSH, however the regulation affects all institutions statewide.  (Id. at 8-9.)  Given the numbers that Defendants have used to justify the regulation, less than one percent of the patient population at CSH has engaged in the illegal activities.  (Id. at 9.)  Defendants do not contend that possession of child pornography is a state-wide problem at other hospitals.  (Id.)  Since CSH opened five employees have been caught in possession of child pornography.  (Id.)  It is not clear if these individuals were included in the numbers to justify the alleged epidemic of child pornography. (Id.)

Plaintiff alleges that when the regulatory scheme is looked at in its entirety it is punitive in relation to the stated government interest.  (Id.)  There is no stated reason for the limitation on property that is allowed under the regulation.  (Id.)  Prior to the amended regulation, Plaintiff was allowed to possess more than one television, one radio, one CD/DVD/BluRay player, and thirty factory DVDS.  (Id.)  The limitations in section 4350 have nothing to do with internet access or possession of illegal materials.  (Id.)

Since the defendants have confiscated all of his electronic property, Plaintiff contends there is no safety and security concern remaining so they may not search his property for illegal material.  (Id. at 9.)  Plaintiff contends that there is less than a one percent statistical probability the he possesses any illegal material based on the numbers that the defendants have put forward. (Id. at 9-10.)  Since there is no claim that Plaintiff engaged in any illegal activity, the regulation improperly allows an illegal warrantless search without any individualized probable cause.  (Id. at 10.)  Sgt. Jones of the Department of Police Services stated that all confiscated property was

booked into evidence and would be searched for illegal material whether or not consent was voluntarily waived. (Id.) Plaintiff contends that a search warrant must be sought before any of the confiscated property can be searched. (Id. at 11.)

On January 18, 2018, Defendant Price circulated a memorandum entitled "Implementation Plan (Phase 1) for Emergency Regulation which set forth the method that would be used to confiscate the contraband property. (Id.) Plaintiff contends that the argument that Plaintiff has an interest in his property once it is mailed out is not persuasive since he refused to consent to an illegal unwarranted search and there is no guarantee that his property will be mailed to a place of his choosing. (Id. at 12.) Further, Plaintiff argues that he has been locked up a long time and is facing an indefinite commitment with no guarantee that he will be release so once his property is taken all interest and ownership of the property ceases to exist. (Id.)

Prior to being incarcerated, Plaintiff lived in Los Angeles and enjoyed excellent radio and television reception. (Id.) He did not have a need for multimedia players. (Id.) However, CSH is located in a rural area. (Id.) There are local policies requiring the removal of metallic antennas from radios and televisions and disallowing external plastic antennas to be placed in the window to make reception possible. (Id. at 12-13.) Plaintiff is not allowed to have cable or MATV to pick up signals. (Id. at 13.) Plaintiff cannot possess a satellite radio. (Id.) These policies practically eliminate all personal channels of communication available to Plaintiff. (Id.) Plaintiff contends that these conditions are punitive in nature and place a far greater burden on Plaintiff than those prisoners that are housed next door at PVSP. (Id.) The prisoners at PVSP are allowed to have an MATV cable hookup in their cell. (Id.) They are also allowed to purchase and possess Xbox 360s and Sony Play Station 2s as long the items are purchased from an approved vendor and the internet connectivity is removed. (Id.)

Plaintiff was previously allowed to purchase Xbox 360s and Play Station 2s and related peripherals from approved vendors. (Id. at 13.) The new regulations allow Plaintiff to possess these items. (Id.) Plaintiff paid a premium price to purchase the items through an approved vendor. (Id.) Although the items are allowed by the new regulation, Defendant Price issued a memorandum on March 23, 2018 disallowing Xbox gaming systems and Play Station gaming

systems.  (Id. at 13-14.)

Plaintiff is a college student and was actively pursing a degree in mathematics.  (Id. at 14.) Among the devices confiscated are his graphing calculators.  (Id.)  The proffered governmental interest is being applied too broadly as this device has no wireless capacity and no internet access capability yet it has been banned.  (Id.)  Plaintiff is unable to pursue his coursework and has been forced to abandon his class and his hopes of earing a degree in mathematics.  (Id.)

Plaintiff seeks a declaration that section 4350 violates his First Amendment rights to freedom of speech and freedom of the press, his Fourth Amendment right against unreasonable search and seizure, and is an unconstitutional taking of his property without compensation under the Fifth Amendment.  (Id. at 18, 20.)  Plaintiff seeks compensatory damages for his confiscated property; punitive damages; and declaratory relief declaring the revised section 4350 null and void as being overly broad in application and punitive in effect.  (Id. at 15.)

**C.     Discussion**

1.     Plaintiff's Claims Against Defendants Price and Ahlin are Barred by *Res Judicata*

For the reasons discussed *infra* in addressing Defendants' motion for judgment on the pleadings, the claims against Defendants Price and Ahlin are barred by *res judicata* due to the final decision on the merits of this claim in the state court.

2.     Whether Plaintiff has Stated a Claim Against Defendants Maylin, Sanchez, and Brewer Based on the Confiscation of His Property Pursuant to the Amendments to Section 4350

The Court considers whether Plaintiff has stated a claim against Defendants Maylin, Sanchez, and Brewer based on the allegations in the third amended complaint that they confiscated his personal property.

**a.     Nature of Action against Defendants**

Here, Plaintiff alleges that he is bringing claims against all defendants in their individual and official capacities.  The court looks to the basis of the claims asserted and the nature of the relief sought to determine if the claims are asserted against the defendants in their individual or official capacity.  Cent. Reserve Life of N. Am. Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988).

A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985); Hafer v. Melo, 502 U.S. 21, 25 (1991). To the extent that Plaintiff attempts to allege an official capacity claim against Defendants Maylin, Sanchez, and Brewer, such claims would be barred by the doctrine of *res judicata* for the reasons discussed *infra*. The official capacity claims are "only another way of pleading an action against an entity of which an officer is an agent." Graham, 473 U.S. at 165. As employees of the state, the named defendants are in privity for the purposes of the official capacity claim challenging the constitutionality of the regulation. Valson, 2018 WL 6620341, at *6. Accordingly, Plaintiff cannot bring a claim against Defendants Maylin, Sanchez, and Brewer in their official capacity for their actions in confiscating items that were considered contraband under the amended regulation.

However, personal capacity suits seek to impose individual liability on the government official for actions taken under the color of state law. Hafer, 502 U.S. at 25. To state an individual capacity claim, the plaintiff must show that the actions of the defendant caused the deprivation of a federal rights. Id. "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Graham, 473 U.S. at 166.

Here, Plaintiff is alleging that on January 22, 2018, Defendants Maylin, Sanchez, and Brewer confiscated most of Plaintiff's personal property, including property that was not contraband, pursuant to the amendment to section 4350. (Id. at 7.) The claims that the named defendants confiscated of Plaintiff's property would be against the defendants in their individual capacity.

**b.    Due Process**

Plaintiff alleges that the confiscation of his property violated his rights under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property

without due process of law, <u>Wolff v. McDonnell</u>, 418 U.S. at 545, and Plaintiff has a protected interest in his personal property, <u>Hansen v. May</u>, 502 F.2d 728, 730 (9th Cir. 1974).  Here, Plaintiff is alleged two separate violations of the due process clause.  Plaintiff contends that the defendants confiscated property that was within the purview of the amendments to section 4350 (an authorized and intentional deprivation) and property that was not within the purview of section 4350 (an unauthorized deprivation).

As to Plaintiff's claim that the defendants confiscated property that was contraband under section 4350, the authorized, intentional deprivations of property are actionable under the Due Process Clause.  <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 532, n.13 (1984); <u>Quick v. Jones</u>, 754 F.2d 1521, 1524 (9th Cir. 1985).  However, these claims that confiscation of his property violated his due process rights because the amendment itself was unconstitutional are barred by *res judicata*.  To the extent that Plaintiff contends that procedural due process was violated by the confiscation of his property, the Court has previously held Plaintiff has failed to state a claim.

> The Court found that the Ninth Circuit's holding in <u>Nevada Dep't of Corr. v. Greene</u>, 648 F.3d 1014, 1019 (9th Cir. 2011), provided the appropriate framework for evaluation of procedural due process claims in the institutional context.  ECF No. 27 at 13-15.  In <u>Greene</u>, the Ninth Circuit found that where "prison officials enacted a system-wide ban [of typewriters] with no exceptions[,]" procedural due process did not require an individual predeprivation hearing where inmate "was notified of the change in the regulation and given an adequate opportunity to comply with it." 648 F.3d at 1019.  Applying <u>Greene</u>, this Court found that Plaintiff failed to allege he was not given an adequate opportunity to comply with the new regulation (or the implementation memorandum issued by Defendant Price), but granted Plaintiff leave to amend his procedural due process claim to allege such facts. ECF No. 27 at 14-15.

(Order Adopting in Part and Declining to Adopt in Part Findings and Recommendations Dismissing Certain Claims in the Second Amended Complaint, 2, ECF No. 35.)  Plaintiff's procedural due process claim was dismissed without leave to amend.  (<u>Id.</u> at 3.)  Plaintiff has acknowledged that he received notice of the amendment to the regulation that made property that was in his possession contraband and Defendant Price's memorandum which designated the contested electronic property as contraband and of the process by which he could have this property sent to an individual of his choice or stored in off site storage.  Plaintiff cannot state a procedural due process claim based on the confiscation of his property that was designated as

1   contraband under the amended regulation.

2        Plaintiff also alleges that property that was not barred by the amendment to the regulation,

3   such as food items and supplements were also confiscated.  The Due Process Clause is not violated

4   by the random, unauthorized deprivation of property so long as the state provides an adequate post-

5   deprivation remedy.  Hudson, 468 U.S. at 533; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir.

6   1994).  The confiscation of items such as food and supplements would not be authorized by section

7   4350 and would therefore be a random, unauthorized deprivation of property for which the state

8   provides an adequate post-deprivation remedy.  Hudson, 468 U.S. at 533 (1984); Barnett, 31 F.3d

9   at 816-17 (California provides an adequate post deprivation remedy for property deprivations).

10  Plaintiff has failed to state a claim for the deprivation of property other than those items prohibited

11  by section 4350.

12       Plaintiff alleges in his complaint that this claim was dismissed because remedies were

13  available in the State court and he had not filed a claim there first.  (TAC 2.)  However, Plaintiff

14  is incorrect that any claim in this action was dismissed for failure to first exhaust state remedies.

15  In Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds by Daniels v. Williams,

16  474 U.S. 327 (1986), the Supreme Court considered whether a negligent taking of property would

17  violate the Due Process Clause.  The Court considered that previous cases finding a due process

18  violation involved deprivations of property that "were authorized by an established state procedure

19  and due process was held to require predeprivation notice and hearing in order to serve as a check

20  on the possibility that a wrongful deprivation would occur."  Parratt, 451 U.S. at 538.  The Court

21  "recognized that postdeprivation remedies made available by the State can satisfy the Due Process

22  Clause.  In such cases, the normal predeprivation notice and opportunity to be heard is pretermitted

23  if the State provides a postdeprivation remedy."  Id.; accord Taylor v. Knapp, 871 F.2d 803, 807

24  (9th Cir. 1989); Barnett, 31 F.3d at 816; Dennison v. Ryan, 522 F. App'x 414, 418 (9th Cir. 2013).[5]

25           Our past cases mandate that some kind of hearing is required at some time before
             a State finally deprives a person of his property interests.  The fundamental
26           requirement of due process is the opportunity to be heard and it is an "opportunity
             which must be granted at a meaningful time and in a meaningful manner."
27

28  _____
    [5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1

> However, . . . we have rejected the proposition that "at a meaningful time and in a meaningful manner" always requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available.

> The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation. That does not mean, of course, that the State can take property without providing a meaningful postdeprivation hearing. The prior cases which have excused the prior-hearing requirement have rested in part on the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities.

Parratt, 451 U.S. at 540-41 (internal citations omitted).

The Supreme Court held that since state remedies are available, even though they may not provide an inmate "with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process." Parratt, 451 U.S. at 544. The Supreme Court did not create an exhaustion requirement, but found that such deprivations are not cognizable under section 1983 because the state has provided an adequate post deprivation remedy to satisfy due process.

Plaintiff relies on Knick v. Twp. of Scott, Pennsylvania, 139 S. Ct. 2162 (2019), to argue that he no longer needs to pursue state remedies before bringing his claims in this action. In Knick, the Supreme Court considered that in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), it had held that a property owner whose property was taken by a local government had not suffered a violation of his Fifth Amendment rights and could not bring a federal takings claim in federal court until after the state court had denied his claim for just compensation under state law. Knick, 139 S. Ct. at 2167. The Court determined that "the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs, conflicts with

1  the rest of our takings jurisprudence, and must be overruled." Id.  The Supreme Court held,

2
> A property owner has an actionable Fifth Amendment takings claim when the
3
> government takes his property without paying for it.  That does not mean that the
> government must provide compensation in advance of a taking or risk having its
4
> action invalidated: So long as the property owner has some way to obtain
> compensation after the fact, governments need not fear that courts will enjoin their
5
> activities.  But it does mean that the property owner has suffered a violation of his
> Fifth Amendment rights when the government takes his property without just
6
> compensation, and therefore may bring his claim in federal court under § 1983 at
> that time.
7  Id. at 2167–68.

8  The Supreme Court considered that one of the cases upon which Williamson County

9  Regional Planning Comm'n had relied was Parratt.  Knick, 139 S. Ct. at 2174.

10
> Parratt did not involve a takings claim for just compensation.  Indeed, it was not a
11
> takings case at all.  Parratt held that a prisoner deprived of $ 23.50 worth of hobby
> materials by the rogue act of a state employee could not state a due process claim
12
> if the State provided adequate post-deprivation process.  But the analogy from the
> due process context to the takings context is strained, as Williamson County itself
13
> recognized.  It is not even possible for a State to provide pre-deprivation due
> process for the unauthorized act of a single employee.  That is quite different from
14
> the taking of property by the government through physical invasion or a regulation
> that destroys a property's productive use.

15  Knick, 139 S. Ct. at 2174.  To the extent that Plaintiff seeks to state a due process claim, Knick

16  did not overrule the holding in Parratt that an adequate postdeprivation remedy under state law

17  provides all the process due for a random and unauthorized deprivation of property.  See also

18  Bruzga v. Cty. of Boulder by & through Bd. of Cty. Commissioners, 795 F.App'x 599, 603 (10th

19  Cir. 2020) (no showing that the reasoning in Knick affects plaintiff's procedural due process

20  claim); Polk v. Godina, No. 1:12-CV-01094-LJO-BAM-PC, 2019 WL 6250697, at *2 (E.D. Cal.

21  Nov. 22, 2019) (Knick draws a distinction between "due process for the unauthorized act of a

22  single employee" and "the taking of property by the government through physical invasion or a

23  regulation.).  Accordingly, Plaintiff cannot state a claim for the unauthorized confiscation of his

24  property.

25      c.      **Fifth Amendment Takings Claim**

26  Plaintiff alleges that the confiscation of his property was a taking of his property in

27  violation of the Fifth Amendment.  The Fifth Amendment provides that "private property [shall

28  not] be taken for public use, without just compensation.  The Takings Clause of the Fifth

Amendment "limits the government's ability to confiscate property without paying for it," and "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal quotations and citation omitted).  The Takings Clause has been applied to two types of governmental action, the taking of physical possession or control of property for public use, and regulations prohibiting private use of property.  Tahoe-Sierra Preservation Counsel. Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 321-22 (2002). To state a claim, a plaintiff must allege that his property was taken for a public purpose.  See Kelo v. City of New London, Connecticut, 545 U.S. 469, 477-80 (2005).

To the extent that Plaintiff claims his Fifth Amendment claim was dismissed because he had not exhausted state remedies, he is incorrect.  Plaintiff's Fifth Amendment claim was dismissed because his "contention that his property was confiscated as contraband does not plausibly allege that the government confiscated his property for a public purpose.  On the contrary, Plaintiff's complaint demonstrates that the property shall be sent to the custodian of Plaintiff's choice as long as no illegal material is involved.  Plaintiff has failed to state a claim under the takings clause of the Fifth Amendment."   (Findings and Recommendations Recommending Dismissing Certain Claims, 17, ECF No. 18 (adopted in part on July 19, 2018 (ECF No. 27).)

Here, Plaintiff's contention that his property was confiscated as contraband does not plausibly allege that the government confiscated his property for a public purpose.  On the contrary, Plaintiff's third amended complaint demonstrates that while Plaintiff is unable to have the property while he is a patient, the property shall be sent to the custodian of Plaintiff's choice as long as no illegal material is present on the device or he can have the property stored in off unit storage if he has no one to whom he can send the property.  Plaintiff has failed to state a claim under the Takings Clause of the Fifth Amendment.

### d.     Fourth Amendment

To the extent that Plaintiff seeks to state a claim that the confiscation of his property violated the Fourth Amendment he cannot do so.  The Fourth Amendment provides that 'the right

of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.  U.S. Const. amend. IV.  The Fourth Amendment prohibition against unreasonable search and seizure extends to incarcerated prisoners and civil detainees.  Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007), cert. granted, judgment vacated on other grounds, 556 U.S. 1256 (2009) (civil detainees).  However, "the reasonableness of a particular search is determined by reference to the prison context."  Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988)).  Confinement in a state institution raises concerns similar to those raised by housing pretrial detainees, such as "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations."  Hydrick, 550 F.3d at 993 (quoting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded.  Espinosa v. City & Cty. of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010).  "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at CSH, it would necessarily be of a diminished scope given Plaintiff's civil confinement."  Warrior v. Santiago, No. 116CV01504AWIGSAPC, 2018 WL 827616, at *4 (E.D. Cal. Feb. 12, 2018) (collecting cases).  Although Plaintiff is not a convicted criminal, "he is involuntarily serving a civil commitment term at a secure facility; and he is not a free individual with a full panoply of rights."  Ryan v. Siqueiros, No. 1:15-CV-01152 DLB PC, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016).  Although civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners, Youngberg v. Romeo, 457 U.S. 307, 322 (1982), maintaining facility security and effectively managing the institution are unquestionably legitimate, non-punitive government interests, Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).

Here, Plaintiff alleges that his property was confiscated because it was deemed to be contraband pursuant to section 4350 and contends that no search can be conducted without a warrant.  While Plaintiff alleges that any security and safety concerns evaporated once the

contraband devices are taken into Defendants' possession, Defendants maintain an interest in determining if illegal material is present on the devices prior to releasing them to a third party of Plaintiff's choosing.  Prison officials are not required to obtain a warrant prior to searching for illegal material in the possession of inmates.  Ferguson v. Cardwell, 392 F.Supp. 750, 752 (D. Ariz. 1975) ("since a prison employee is subject to search without a warrant or probable cause, it necessarily follows that the inmates are likewise subject to searches without a warrant or probable cause").  Given the context of the allegations here, Plaintiff has failed to state a cognizable claim under the Fourth Amendment for seizure or search of his property.

### e.    Leave to Amend

Plaintiff has failed to state a cognizable claim under section 1983 against Defendants Maylin, Sanchez, and Brewer for a violation of his federal rights.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend  shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint."  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004); accord Madeja v. Olympic Packers, LLC., 310 F.3d 628, 636 (9th Cir. 2002). The factors are not given equal weight and futility alone is sufficient to justify the denial of a motion to amend.  Washington v. Lowe's HIW Inc., 75 F.Supp.3d 1240, 1245 (N.D. Cal. 2014), appeal dismissed (Feb. 25, 2015).

Plaintiff has previously been granted leave to file an amended complaint with guidance from the Court.  Plaintiff's third amended complaint is largely identical to the first and second amended complaints which have been previously screened.  Those claims which have been found to state a claim are barred by *res judicata* and Plaintiff has failed to state any other cognizable claims.  Based upon the allegations in Plaintiff's original, first, and second amended complaints, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support any additional claims and further amendment would be futile.  See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.")  Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not

1    warranted.  Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

2                                        **V.**

3                      **CONCLUSION AND RECOMMENDATION**

4          Based on the foregoing, IT IS HEREBY RECOMMENDED that:

5    1.      Defendants Price and Ahlin's motion for judgment on the pleadings, filed February

6            21, 2020, be GRANTED;

7    2.      Plaintiff's claims against Defendants Maylin, Sanchez, and Brewer be dismissed

8            without leave to amend for failure to state a claim;

9    3.      The third amended complaint be dismissed without leave to amend; and

10   4.      This action be dismissed with prejudice on the ground of *res judicata* and for failure

11           to state a claim.

12         This findings and recommendations is submitted to the district judge assigned to this

13   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **thirty**

14   **(30) days** of service of this recommendation, any party may file written objections to this

15   findings and recommendations with the court and serve a copy on all parties.  Such a document

16   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

17   district judge will review the magistrate judge's findings and recommendations pursuant to 28

18   U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

19   time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th

20   Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

21

22   IT IS SO ORDERED.

23   Dated:    **July 29, 2020**
                                          _____
24                                        UNITED STATES MAGISTRATE JUDGE

25

26

27

28